THE STATE ex inf. ATTORNEY-GENERAL, Appellant, v. HOGAN et al.

163 43
101a 214

### Division Two, May 21, 1901.

1. **Quo Warranto:** PLEADING: NECESSARY AVERMENTS. In a quo warranto brought by the Attorney-General ex officio to oust a corporation of its corporate rights and franchises, it is not necessary, in order to put the respondent incorporators on their defense, that the information show upon its face anything more than that they assumed, usurped and unlawfully exercised the privileges of an incorporation. Nor does it alter the case that the information may have undertaken to specify the grounds upon which it proceeds.

2. ———: CORPORATION: OUSTER. Where the articles of incorporation recite that the capital stock has all been subscribed and all paid up in lawful money of the United States, the corporation will be ousted of its corporate rights and franchises, if the return of the incorporators to the Attorney-General's information shows that in point of fact the capital stock has never been paid in lawful money of the United States or its equivalent in property.

3. ———: ———: ———: EQUIVALENT PROPERTY. An option in a silver mine, beyond the limits of the United States, of which one of the incorporators asserts that he is the owner without any evidence to show that he has acquired title thereto, is not money or property within the meaning of the Constitution and statutes of this State.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED AND REMANDED *(with directions).*

*P. H. Bierman* and *J. K. Hansbrough* for appellant.

(1) The return to exofficio informations, such as this, must either disclaim or justify. The State is under no obligation, in the first instance, to aver anything, except in the most general terms; nor to show anything, notwithstanding it may have undertaken to specify the grounds upon which it proceeds. Thompson on Private Corporations, secs. 775, 6797, 776; State v. Gleason, 12 Fla. 265; State ex inf. v. Vallins, 140 Mo. 523; High on Extdy. Legal Remedies, sec. 629; Mechem's Pub. Off., secs. 491, 492, 494; People v. Monticilo Water Co., 97 Cal. 276; Jersey City Gas Co. v. Dwight, 29 N. J. Eq. 242; Clark v. People, 15 Ill. 217; People v. Ridgeley, 21 Ill. 67; People v. Richardson, 4 Cowen, 118 Respondents, by their return, undertake to justify. But the facts stated are no justification. Sec. 8, art. 12, Constitution; Secs. 2494, 2768, R. S. 1889; Garritt v. Coal Mining Co.,

113 Mo. 338. (2) Even if the facts stated in the return constituted a justification, being denied, they must be proved, else judgment goes for plaintiff, and the court erred in rendering judgment for respondents.

*F. H. Bacon* for respondents.

BURGESS, J.—This is a proceeding in the nature of quo warranto on an·ex officio information by the Attorney-General in the circuit court of the city of St. Louis, and directed to the respondents herein, its purpose being to inquire by what authority and right respondents entered into, used, exercised and enjoyed the liberty, privileges and franchises of a body politic and corporate under the name of the "La Trinidad Mining and Developing Company," a corporation organized under the laws of this State.

The information leaving off the caption, is as follows:

"Now comes the State of Missouri, by E. C. Crow, its Attorney-General, and gives the court to understand and be informed that heretofore, to-wit, on or about the second day of July, A. D. 1896, the defendants, Robert G. Hogan, Luther S. Taylor, Adolph B. Benesch, John A. Hudson, Charles B. Gibson, James Wark, W. R. Smythe and Robert G. Hogan, trustee, executed and acknowledged certain pretended articles of agreement, of date the said second of July, 1896, and on that day caused the same to be recorded in the office of the recorder of deeds for the city of St. Louis, Missouri, which said alleged articles of incorporation are in words and figures as follows:

" 'Be it known that the undersigned, in order to incorporate under the laws of Missouri, governing. the formation of manufacturing and business companies, do hereby enter into the following agreement:

" 'First.　The name of the company shall be the La Trinidad Mining and Developing Company.

" 'Second.　The company shall be located at the city of St. Louis.

" 'Third.　The amount of the stock shall be ninety thousand dollars, divided into ninety thousand shares of the par value of one dollar each; that the same has been bona fide subscribed and all thereof actually paid up in lawful money of the United States, and is in the custody of the persons hereinafter named as the board of directors.

" 'Fourth.　The name, place of residence of the several shareholders, and the number of shares of stock subscribed by each are as follows:

Robert G. Hogan, St. Louis, Mo.....30,000 shares
Luther S. Taylor, St. Louis, Mo.... 2,000 shares
Adolph B. Benesch, St. Louis, Mo... 2,500 shares
John A. Hudson, St. Louis, Mo..... 3,000 shares
Charles B. Gibson, St. Louis, Mo..... 2,000 shares
James Wark, St. Louis, Mo....... 500 shares
W. R. Smythe, St. Louis, Mo...... 100 shares
Robt. G. Hogan, trustee, St. Louis...49,900 shares

" 'Fifth.　The directors of the company shall be composed of seven shareholders; and the names of those agreed upon for the first year are: Robert G. Hogan, Luther S. Taylor, Adolph B. Benesch, John A. Hudson, Charles B. Gibson, James Wark, W. R. Smythe.

" 'Sixth.　The company shall continue for a term of fifty years.

" 'Seventh.　The company is formed for the purpose of mining, milling and reducing all kinds of metals, minerals and coals, and also for prospecting, and for doing a general milling, smelting and reducing business; also for buying, selling, mortgaging, trading and exchanging all kinds of property, whether real, personal or mixed.

" 'In testimony whereof, we have hereunto set our hands this second day of July, A. D. 1896.

" 'ROBERT G. HOGAN, (seal.)
JOHN A. HUDSON, (seal.)
ROBT. G. HOGAN, Trustee, (seal)
ADOLPH B. BENESCH, (seal.)
LUTHER S. TAYLOR, (seal.)
CHARLES B. GIBSON, (seal.)
W. R. SMYTHE, (seal.)
JAMES WARK, (seal.)

" 'State of Missouri, ⎱
City of St. Louis, ⎰

On this second day of July, 1896, before me personally appeared Robert G. Hogan, Luther S. Taylor, Adolph B. Benesch, John A. Hudson, Charles B. Gibson, James Wark, and W. R. Smythe and Robert G. Hogan, trustee, to me known to be the parties described in and who executed the foregoing instrument, and acknowledged that they executed the same as their free act and deed.

" 'In testimony whereof I have hereunto set my hand and official seal, at my office in the city of St. Louis, Missouri, this second day of July, A. D. 1896.

JOSEPH B. WIDEN,

Notary Public, city of St. Louis, Missouri.

My term expires September 5, 1897.

" 'Copy of seal:

Joseph B. Widen,
Notary Public,
City of St. Louis,
Missouri.

" 'Filed and recorded July 2, 1896, at 10:07 a. m.

" 'M. D. LEWIS, Recorder.'

"That thereafter, on or about the sixth of July, 1896, said alleged articles of incorporation were filed in the office of the Secretary of State of Missouri, and there was issued, based upon said alleged articles, the recording thereof and filing as aforesaid by said Secretary of State, a certificate of the corporate existence of said defendants, Robert G. Hogan, Luther S. Taylor, Adolph B. Benesch, John A. Hudson, Charles B. Gibson, James Wark, W. R. Smythe and Robert G. Hogan, trustee, under the name of the La Trinidad Mining and Developing Company.

"That under and by virtue of said pretended articles of incorporation and certificate thereof the said defendants last named claim to be and as incorporators act as a body politic and corporate under the general statutes of Missouri for the incorporation of manufacturing and business companies, under the name of said La Trinidad Mining and Developing Company; and as such pretended incorporators and pretended corporation have exercised and are exercising and carrying on the business of a manufacturing corporation, under the name of the La Trinidad Mining and Developing Company.

"That, by the third paragraph of said alleged articles of incorporation, the capital stock of the same is fixed at ninety thousand dollars, divided into 90,000 shares of the par value of one dollar each; and it is therein falsely stated and acknowledged that all of said stock was bona fide subscribed, and the whole thereof actually paid up in lawful money of the United States, and was in the custody of the persons therein named as the first board of directors of said alleged corporation.

"But the plaintiff says that at the time of executing said alleged articles of incorporation, and filing same for record, or since then, none of said stock has been bona fide subscribed, nor had there been, nor has there since been, any part thereof actually paid in lawful money of the United States, or its

equivalent in property, which might answer the purpose of such money in the conduct of the business for which said pretended company was organized; nor, was there then, nor has there since been, any portion of such money, or its equivalent in property, in the custody of the persons therein named as the first board of directors of said corporation.

"That the executing and recording of said alleged articles of incorporation, and procuring the issuance of a certificate of corporate existence, and organizing and acting thereunder as a legal corporation, under the corporate name of the La Trinidad Mining and Developing Company, all, as aforesaid, were in fraud, evasion and violation of the laws of the State, and an illegal usurpation of the franchises thereof.

"Wherefore, plaintiff, by its Attorney-General, asks that said defendants be required to show by what authority they claim to be and act as a corporation, or exercise the franchise of one; and that upon such showing, they be excluded from all corporate rights, privileges and franchises, and that said pretended incorporation be declared null and void; and for judgment of ouster of said alleged franchises."

The return of defendants, to the writ issued against them to show cause, alleges that they are using and exercising the franchises and privileges of the said corporation, the La Trinidad Mining & Developing Company, by virtue of a certificate of incorporation issued to them by the Secretary of State, on their filing with him, a certified copy of the articles of agreement executed by them as alleged in the information. It then denies the allegations of the information to the general effect, that at the time of executing and filing with the recorder, said articles of incorporation, or since then, none of the stock had been bona fide subscribed, or any part thereof, paid in money, or its equivalent in property; nor was there then, or since, any

portion of such money or property in the custody of the first board of directors. It further denies that the execution of the articles of agreement, and the procuring of the certificate of incorporation, and acting thereunder, was in fraud, evasion or violation of the laws of the State.

It then avers "that at the times of filing said articles of incorporation, the whole of its capital stock, $90,000, had been actually, in good faith, subscribed, and that property to the full value thereof, was in actual custody of the persons therein named as the first board of directors, as hereinafter more fully set forth."

It further states, substantially, in explanation of the articles of incorporation, that about June, 1896, one Andy Evans was the owner of an option for the purchase of certain mining property in Old Mexico, for $21,000, Mexican money, payable in installments extending over two years; that the property was of the reasonable value of $100,000. It then goes on to describe the property, and to state the reason why the option was a bargain at $90,000, among which was the fact that under it the property could be bought for $10,000 American money. That said Evans, about June, 1896, came to St. Louis and negotiated for the sale of said option to respondent, Hogan, and that said Hogan, after an examination of the property, was reasonably satisfied that it was well worth $100,000. Whereupon, he interested in said property a large number of his friends and acquaintances; and it was thereupon agreed between them that a corporation should be organized by said Hogan and associates, after full consultation, in which said Wark, Hudson and Evans participated under the name of the La Trinidad Mining & Developing Company, with a capital stock of $90,000; that the stock should all be issued to said Evans and Hogan, in payment for the option and rights of Evans on the property, and to Hogan for his services in investi-

gating the same and organizing the company. That all the stock was to be assigned by said Evans and Hogan to the company and directors to be disposed of as follows:

Thirty thousand shares to be company or treasury stock, and sold to the said parties interested, and their friends, at par, or one dollar a share, for the purpose of raising the capital necessary to pay for and develop the mine, and was to be paid for in installments of twenty-five per cent as required. The other 60,000 shares were to be held in trust for Evans and Hogan, each 30,000; provided the $30,000 to be raised from the treasury stock, at par, should be sufficient to put the mine on a paying basis. That, if the treasury stock did not realize a sufficient sum to put the mine on a paying basis, then the stock held by the company for Evans and Hogan should be sold, from time to time, an equal amount of the stock of each, until enough money was realized to put the mine on a paying basis. That the agreement was entered into by advice of counsel, and in good faith on the part of the incorporators and all interested in the mine, believing that the property was well worth $100,000. That articles of incorporation were drawn up in accordance with said arrangement, and subscriptions made substantially as alleged in the information herein; and the subscriptions were made in good faith, and for the purposes aforesaid, and in order to obtain a full return to the stockholders and without any intention of defrauding the State. At the time, the option contract was assigned by Evans to Hogan, as trustee for the company; and at the time of the incorporation, was held by Hogan for its benefit. After the incorporation, all the 90,000 shares of stock were issued to said Hogan and Evans, and by them assigned to the company; after which, 30,000 shares were sold to the original subscribers and others, at par, and the $30,000 received therefor was expended in payments on the mine, purchasing machinery, and for labor

in working the mine.   That afterward, about 2,500 shares of said Evans and Hogan trust stock were sold at par, and the money invested in the mine, thus making a total of $32,500 cash which had been expended in and about said mining property up to the beginning of this suit, which property was of the reasonable value of $100,000.

The return further states, that the respondents, Robt. G. Hogan, Luther S. Taylor, Chas. B. Gibson, Adolph B. Benesch, James W. Wark, and John A. Hudson are directors of said company, as well as Emile Verdier, T. B. Wyrick, and Paul H. Bierman.

The three last named are not parties to this action.

The case was submitted to the court on the pleadings. The judgment was for defendant, from which relator appeals.

The question for solution by this court is, does respondents' return state a good defense to the proceeding.

The information being ex officio it was unnecessary that it show upon its face anything more than that the respondents assumed, usurped and unlawfully exercised the privileges of an incorporation in order to put them upon their defense (State ex inf. Dearing, Pros. Atty., v. Berkeley, 140 Mo. 184; State ex inf. v. Vallins, 140 Mo. 523; Mechum's Pub. Off., sec. 491; Tomlins Law Dic., tit. Quo. War. 281), and the fact that the information may have undertaken to specify the grounds upon which it proceeds does not alter the case.

In the third paragraph of the articles of incorporation it is recited that the amount of the capital stock shall be ninety thousand dollars, divided into ninety thousand shares of the par value of one dollar each; that the same has been bona fide subscribed and all thereof *actually paid up in lawful money of the United States and is in the custody of the persons thereinafter named as the first board of directors,* while the effect of the return of respondents is to admit that this statement is not

true in point of fact, and that no part of the capital stock has ever been paid in lawful money of the United States, or its equivalent.

By section 8, article 12, of the Constitution of 1875, it is provided that "no corporation shall issue stock or bonds, except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." By statute it is provided that "the stock or bonds of a corporation shall be issued only for money paid or property actually received." [R. S. 1889, sec. 2499.]

By what process of reasoning an option upon a silver mine beyond the limits of the United States of which a certain person asserts he is the owner without any evidence whatever of that fact, or as to how he acquired his title to the mine, if any he ever had, is money or property within the meaning of the provisions of the Constitution and statute and defendants' articles of incorporation, we are unable to conceive. An option of this character can only be regarded as intangible, and mythical, and in no sense money or property. And obtaining the charter was simply an attempt to acquire corporate functions by a pretentious or evasive compliance with the law, was not in good faith, actual and honest, as distinguished from fictitious, pretended and deceptive, and we can but conclude that if the facts had been fully known by the Secretary of State at the time the certificate of incorporation was issued, it would never have been done.

The burden was on respondents to show a compliance with the law, but instead of so doing, their return shows a failure to comply therewith and that their articles of incorporation were obtained by deception and a misrepresentation of the facts.

The judgment is therefore reversed, and the cause remanded with directions to the court below to enter up judgment excluding respondents from all corporate rights, privil-

eges and franchises and that their certificate of incorporation be declared null and void, and they ousted of their alleged franchise.

*Sherwood, P. J.,* and *Gantt, J.,* concur.