## JAMES A. DONNELL, Contestant, v. ARTHUR R. LEE, Contestee.

### St. Louis Court of Appeals, December 23, 1902.

1. **Election, Contested: APPELLATE PRACTICE.** An appellate court in a contested election case will adopt the findings of the trier, as in a law case.

2. ————: **PUBLIC OFFICERS, ELECTION OF: INITIALS OF JUDGES ACROSS BALLOTS.** Revised Statutes 1899, section 7104, requiring two judges of election having charge of the ballots to write their initials on the back of the ballots, was not intended to control in the election of a city officer, but applies only to the election of a public officer.

3. ————: ————: **STATUTES CONSTRUED.** A general affirmative statute does not repeal a prior and special one, unless words negativing the continuance of the prior act are used, or the two acts are repugnant to each other, or are wholly irreconcilable, or the legislative intent to repeal the prior act is clearly manifest.

4. ————: ————: **CONSTRUCTION OF STATUTES: REPUGNANCY THEREOF.** Revised Statutes 1899, section 6995, article 1, chapter 102, entitled "Elections," provides that, whenever a registration is required by law, in addition to the current number, the registration number of the voter shall be indorsed on his ballot, and that no ballot not so numbered shall be counted. Revised Statutes 1899, section 7104, directs that the two judges of the election having charge of the ballots shall write their names or initials upon the backs of the ballots. Revised Statutes 1889, section 4785, providing that "no judge of election shall deposit any ballot on which the names or initials of two of the judges as hereinbefore provided for does not appear," was amended by Acts, 1891, section 11, so as to read: "Every ballot shall be numbered in the order in which it shall be received. No judge of election shall deposit any ballot, on which the names or initials of the judges, as hereinbefore provided for, do not appear." Acts 1891, section 13, provides that "all acts or parts of acts inconsistent with this act are hereby repealed." Section 7210, Revised Statutes 1899, provides that all elections in a city of 25,000 and under 100,000 inhabitants shall be subject to all the provisions of the chapter entitled "Elections." *Held*, that the two acts (sec. 6995, R. S. 1899, and sec. 4785, R. S. 1889, as amended) were not inconsistent or repugnant to each other, and that the Act of 1891 manifested no

intent on the part of the Legislature to repeal or modify the mandatory words of section 6995, when applied to city elections.

5. ———: ———: BALLOTS, SECRECY OF: IN COURT. The ballots in a contested election case, can under no circumstances be produced in open court, and be made a record of.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

The city of Springfield is a city of the third class and is divided into eight wards. On the first day of April, 1902, a city election was held in said city for the election of city officers. There were three tickets in the field, a Democratic, a Republican and a Socialist ticket. James A. Donnell was the Democratic nominee for the office of city collector, Arthur R. Lee was the nominee of the Republican party, and F. M. Johnson of the Socialist party for the same office. In each of the eight wards there was a polling place.

The returns of the election were certified and delivered by the judges and clerks of the election to the city clerk on the evening of the election, except those from one ward in which the election is not contested. On the eighth day of April the voting list or poll books, tally sheets and ballots from all the wards were produced by the clerk to the city council. The council, in compliance with an ordinance of the city, cast up the vote of the entire city as shown by the voting list and declared the result. The result as ascertained by the city council showed that Lee had received 2,300 votes for collector, Donnell 2,291, and Johnson 104. The certificate of election was delivered to Lee, who afterwards qualified and took possession of the office and is now in possession of the same.

On the fourteenth day of May, 1902, James A. Donnell, the contestant, filed in the circuit court of Greene

county, his notice of contest. The principal grounds set forth in the notice with sufficient particularity are that a number of persons voted for Lee who were not legally qualified voters and that a number of ballots in each of the wards were cast for contestant that were not counted for him; that there were a number of ballots cast for contestant that were counted for contestee and that a number of ballots counted for contestee were not numbered or properly numbered, and that the face of the ballots as returned to the clerk of the city, if properly counted, will show that contestant received a plurality of 458 votes over the contestee.

The contestee filed in the same court a counter-notice of contest, the main features of which are that in the First ward there were nine ballots cast for contestee that had been changed by erasing the name of the contestee therefrom and writing in the name of contestant, after the ballots had been returned to the clerk; that in the Fifth ward thirty-five ballots had been changed in a like manner and in the Eighth ward thirty-three ballots had also been changed in the same way; that in some of the wards ballots had been prepared by the voter, or by some one for him, on the outside of the polling place and had then been deposited with the judges of the election, and these illegal ballots had been received by the judges and counted for the contestant; that the voter voting these ballots had abstracted the ballots furnished by the judges of the election and substituted the illegal ballots in their stead (these illegal ballots are termed "Indian ballots" in the pleadings and transcript) that a large number of ballots had been cast for the contestant by persons who were not legally qualified voters, naming them, and that a number of votes were cast for contestant that were not numbered with the current number of the ballot, or with any number showing the current and registration number of the person who cast the ballot; that in the Third ward two

hundred and forty-one ballots were cast for the contestant that were not numbered by the registration number of the voters.

The evidence shows that from several of the wards, and especially from the Eighth, the ballots cast at the election were delivered to the city clerk in an unsafe condition; that they were placed in torn and mutilated envelopes and those from the Eighth ward were in an ordinary grocer's paper sack, tied up with a string; that this paper sack and some of the envelopes containing the ballots were so torn as to expose the ballots; that in this condition they were placed on the top of a desk by the clerk in his office where they remained during the night. On the next day the clerk placed them in a compartment of an ordinary writing desk in his office and locked it. They remained in this compartment until they were taken out on the eighth of April by the clerk and taken before the city council.

The clerk testified that the office was locked on the night the ballots were delivered to him and, so far as he could tell, they were in the same condition as when received when he took them before the council on the eighth of April. That there was no tally sheet delivered with the poll list or ballots from the Eighth ward.

Two of the judges of the election in the Eighth ward, however, testified that one of the tally sheets was delivered with the poll book from that ward.

It is also in evidence that the office of the clerk was guarded for two nights, after the poll books and ballots had been delivered, by persons remaining in the office.

The contestant had his office in the room with the city clerk and the desks were near each other, but he was in the office only for a few minutes at a time from the day of the election until the count was made by the city council, and then in the daytime and did not know where the ballots were kept. There were four keys to the office, one in the possession of the clerk, one usually

in the possession of Donnell, the contestant, who was then city collector, one in the possession of the janitor of the building, and one in the possession of the mayor. The key in the possession of Donnell was, sometime before the election, delivered to a Mrs. Williams, who was an assistant of the clerk and also of Donnell, and was retained in her possession for sometime after the election. There is no evidence that any of these persons having possession of the keys to the office, except the clerk, knew where the ballots were kept or any intimation that they or either of them tampered with the ballots. The office was in the second story of the building. The windows on the south side of the office were not fastened and could have been reached by a ladder from the outside and an entrance made into the office through them.

After the result of the election had been ascertained by the city council, the city clerk placed the ballots in two ballot boxes, locked them and secured them with strings and placed a seal on them. Over the keyholes of the boxes he pasted a paper upon which were the initials of his name. In this condition they remained until they were afterwards opened by the clerk in pursuance of the following order made by the court at the instance of the parties to this proceeding:

"That G. W. Hackney, the city clerk, at a time to suit his convenience, within thirty days from this date, first, having given five days' notice in writing to each of the parties, taking to himself such assistance as may be necessary, proceed to open the ballots cast at the late election on April 1, 1902, in the city of Springfield in the respective wards, in the presence of the counsel for both contestant and contestee, first having given them notice of the time and place of such count, and all of such persons present (the parties and their respective counsel, the clerk and his assistants), first having taken and subscribed the oath as to secrecy required by the statute in that behalf; that he proceed to open, count,

compare and exhibit the ballots as to such election in the following manner: that he exhibit to the parties and their attorneys the face of each ballot cast, and at the time of so doing conceal from such parties and their attorneys the number of such ballot, until the count is complete in the ward counted at that time; and that he cast up and count the votes so cast for each candidate in such ward or precinct. That thereafter, and in a manner so as not to disclose what candidate was voted for on such ballot, and by keeping the face of the ballot concealed at the time, he proceed to exhibit the numbers and backs of such ballots to the parties and their attorneys and compare the numbers of such ballots with the poll books and registration books of such ward so as to ascertain that the numbers on such ballots correspond with the numbers on such poll books and registration books; and if any ballots cast at such election do not correspond in numbers to the numbers on the poll books and registration books he shall take a note thereof; that in each and every ballot in each and every ward he shall make note of and make a certificate to this court of all the facts appearing upon the ballot which either party shall desire to be brought before this court, or a note taken of, and he shall count and add up the number of votes cast in the whole city for each of the said candidates, and certify the same to this court in this manner, and that he make a tabulated statement to this court showing the official count in each ward, as well as the count made by this order.''

In compliance with this order the count was made by the clerk in the presence of the counsel for the respective parties, after administering to them an oath of secrecy. A recount of the ballots, under the order of the court, showed that Lee had received 2,269 votes, Donnell 2,306 and Johnson 111, giving Donnell a plurality of 37.

During the count the contestee's counsel discovered what they believed to be a number of suspicious ballots

and had the clerk number each of them on their face and then amended the contestee's notice of contest, alleging that the name of Lee had been erased and Donnell's substituted on these ballots after the ballots had left the hands of the judges of the election, and moved the court to require the clerk to produce them for examination by the court. It was alleged that nine ballots cast in the First ward, thirty-three in the Fifth ward, and thirty-three in the Eighth ward, had been changed after they had been cast by the voter and after the election was closed by the erasure of the name of Lee for collector and the insertion therein of the name of Donnell. This motion was denied at the time.

Evidence was then introduced that the ballots which the contestee asked to have produced in his motion were Republican tickets with the exception of one, which was a Socialist ticket, and that the name of Arthur R. Lee for collector had been erased and the name of James A. Donnell had been written in lieu thereof; that the name of Donnell had been written in these ballots by the same person and that the handwriting was the same on all of them.

There was countervailing evidence but after hearing the evidence pro and con the court granted the order, in words and figures as follows:

"And now pending the trial of this cause—and after the evidence has been heard for the contestor and the contestee, it becomes necessary in the opinion of the court in order to determine the issues to examine ballots in the contest described as bearing clerks' numbers 8, 88, 141, 168, 264, 330, 413, 436, 331 in the First ward, and certain ballots bearing clerks' numbers 39, 67, 84, 125, 129, 136, 138, 150 in the Fifth ward, and also ballots bearing clerks' numbers 225, 234, 235, 326, 327, 339, 341, 425, 426, 434, 328, 499, 503, 508, 509, 511, 513, 516, 517, 600, 602, 604, 611, 614, and bearing clerks' numbers 82, 90, 61, 102, 104, 106, 107, 113, 125, 127, 134, 137, 173, 174, 186, 187, 195, 199, 222, 237, 249, 250, 251, 333,

471, 521, 528, 582, 600, in the Eighth ward of said city. That it is also necessary to a complete and full determination of the cause and the issues therein that the clerk certify the names of the voters who voted said ballots as they appear by the poll books of said wards. The court therefore makes the following additional orders upon the city clerk:

"*First.* You are commanded to reopen the ballots of the First ward voted at the city election and take therefrom the following ballots, numbered with your number: 8, 88, 141, 168, 264, 330, 413, 435 and 441. You are to compare these ballots and the voting number thereon with the poll books and ascertain and report to the court who voted each of said ballots respectively.

"You are to open again the ballots voted in the Fifth ward at said election and take therefrom ballots numbered with your numbers 49, 81, 67, 126, 129, 146, 148 and 150; also the following ballots in said ward, numbered with your number, 225, 234, 235, 326, 327, 339, 341, 425, 426, 427, 434, 428, 499, 503, 508, 509, 511, 513, 516, 517, 600, 692, 604, 611, and 614. You are to compare those several ballots with the poll books and ascertain and report to the court the names of the persons voting such ballots respectively.

"You are to open the ballots in the Eighth ward and take therefrom ballots numbered with your numbers 82, 90, 91, 102, 104, 106, 107, 113, 125, 127, 134, 137, 173, 174, 186, 187, 195, 199, 222, 237, 249, 250, 251, 333, 471, 521, 525, 528, 582 and 600. And you are to compare said ballots with the poll books and ascertain and report to the court the names of the voters voting said ballots respectively.

"*Second.* You are to bring said ballot and each and every one of them before the circuit court of Greene county, Missouri, immediately, for the use of the court and the parties in the trial of said cause. You are to allow the parties and their attorneys to be present dur-

ing the opening of said ballots for the examination thereof.

"In all things pertaining to the comparing and production of said ballots you are to be careful to preserve the same and to carefully preserve and seal the remaining ballots, and prevent their exposure and after the use of the ballots in court you are to return the same to the proper place with the other of said ballots and seal all of same properly.

"You are also to compare the poll books with the ballots of L. D. Foltz, and Thomas Foltz and Oscar Lowery in the Seventh ward; J. M. King and N. W. Murphy in the Third ward; and Frank McNeilis in the Sixth ward and report to the court for whom said voters voted."

To which order of the court the contestant duly objected and excepted at the time.

To the order the clerk made the following return:
"Hon. James T. Neville,
    Judge of circuit court,
        Greene county, Missouri.

"In compliance with your order in the contest case of James A. Donnell v. Arthur R. Lee, for the office of city collector of the city of Springfield, Missouri, I did in the presence of the attorneys for the contestant and contestee, reopen the ballots cast at the election for city officers of said city on the first day of April, 1902, and did select from said ballots in conformity with your order, ballots from the First ward numbered 8, 88, 141, 168, 164, 330, 413, 435, and 441; from the Fifth ward ballots numbered 49, 67, 81, 126, 129, 146, 148 and 150, also ballots numbered 225, 234, 235, 326, 327, 339, 341, 425, 426, 427, 428, 434, 499, 503, 508, 509, 511, 513, 516, 600, 602, 654, 611 and 614; and from the Eighth ward ballots numbered 82, 90, 102, 104, 106, 107, 113, 125, 127, 134, 137, 173, 174, 186, 187, 195, 199, 237, 349, 250, 251, 333, 471, 521, 525, 528, 582 and 600.

"The above numbers are the numbers placed upon

the face of the ballots by me in the original re-count under the order of your honorable court.

"Upon comparing these ballots, the numbers upon the backs with the corresponding numbers on the poll books, I found that the clerk's number compared with voting numbers on back of ballots, and that said ballots were voted by persons, as follows:

FIRST WARD.

| Clerk's No. | Voting No. | Name. |
|---|---|---|
| 8 | 99 | Tolbert Foster |
| 88 | 49 | J. Earl Ford |
| 141 | 154 | W. W. Whitaker |
| 158 | 105 | E. C. Jones |
| 264 | 210 | Q. E. Robb |
| 330 | 343 | F. P. Agnew |
| 413 | 420 | S. R. Bowers |
| 435 | 431 | Lewis Potter |
| 441 | 458 | Arthur Wagstaff |

FIFTH WARD.

| Clerk's No: | Voting No. | Name. |
|---|---|---|
| 49 | 663 | W. H. Ford |
| 67 | 634 | Julius Seifert |
| 81 | 644 | Chas. Elliot |
| 126 | 583 | Edward McClure |
| 129 | 568 | Budd Hancock |
| 146 | 547 | Clark Hancock |
| 148 | 540 | Chas. Blakey |
| 50 | 594 | E. H. Smith |
| 225 | 491 | W. B. Stewart |
| 234 | 454 | C. H. Miller |
| 235 | 493 | S. L. Haynes |
| 326 | 368 | I. C. Sherwood |
| 327 | 372 | E. Knabb |
| 339 | 311 | M. G. Moist |
| 341 | 303 | H. S. Merritt |
| 425 | 296 | O. L. Peak |
| 426 | 269 | M. E. Hambleton |

Donnell v. Lee.

| | | |
|---|---|---|
| 427 | 266 | C. H. Rippey |
| 428 | 265 | W. W. Hargis |
| 434 | 249 | A. P. Hall |
| 499 | 218 | H. P. Douglas |
| 503 | 183 | M. L. Chaudet |
| 508 | 156 | F. C. Bentley |
| 509 | 181 | J. C. Flanner |
| 511 | 210 | E. W. Ball |
| 513 | 144 | J. F. G. Bentley |
| 614 | 4 | N. E. Long |
| 516 | 208 | A. B. Conklin |
| 517 | 147 | J. T. Carr |
| 600 | 86 | H. C. Garlick |
| 602 | 105 | W. J. Conkling |
| 604 | 83 | J. E. Hitt |
| 611 | 137 | E. E. Stringfield |

## EIGHTH WARD.

| Clerk's No. | Voting No. | Name. |
|---|---|---|
| 82 | 59 | W. R. Smith |
| 90 | 160 | W. M. Hames |
| 91 | 186 | W. E. Sawyer |
| 102 | 148 | J. T. Wicker |
| 104 | 112 | W. D. Agnew |
| 106 | 126 | R. B. Wallace |
| 107 | 139 | Ed Haskill |
| 113 | 111 | G. H. Brooks, Sr |
| 125 | 138 | A. J. Lowery |
| 127 | 142 | J. L. Conley |
| 134 | 188 | A. S. Latimer |
| 137 | 196 | Z. J. Brashears |
| 173 | 233 | A. L. Schofield |
| 174 | 225 | C. F. Baker |
| 186 | 158 | A. F. Butts |
| 187 | 161 | J. L. Ormsbee |
| 195 | 168 | J. T. Creson |
| 199 | 170 | W. H. Foss |
| 222 | 219 | Chas. Hoyt |

237.................218.........J. R. Andrews
249..................223.......J. C. Smithmier
250.................215...........C. J. Negus
251.................254.............Joe Kerr
333.................351.............Otis Fuls
471.................475...........P. A. Dirth
521.................498.........A. C. Fender
525.................578..............B. Laker
528.................526............C. E. Reed
582.................587.........E. J. DeWitt
600.................614..........J. W. Wilks

"In further compliance with your order I examined the ballots cast by J. M. King and N. W. Murphy in the Third ward; by Frank McNelis in the Sixth ward; L. D. Foltz and Chas. Foltz and Oscar Lowery in the Seventh ward and I find the parties voted as follows:

"J. M. King, voting number 259, voted for James A. Donnell for city collector.

"N. W. Murphy, voting number 332, voted for James A. Donnell for city collector.

"Frank McNeeley, voting number 332, voted for James A. Donnell for city collector.

"L. D. Foltz, voting number 308, voted for James A. Donnell for city collector.

"Chas. Foltz, voting number 611, voted for James A. Donnell for city collector.

"Oscar Lowery, voting number 600, voted for James A. Donnell for city collector.

"I herewith transmit to the court the ballots asked for, in the First, Fifth and Eighth wards, that were voted at the election for city officials, April 1, 1902.

"Respectfully submitted,

"G. W. Hackney,

"City Clerk."

The persons named in the return as having voted the tickets shown by the current number opposite the names of each were brought before the court and examined in respect to how they voted for the office of col-

lector, and whether or not they made or authorized the substitution of the name of Donnell in lieu of Lee's. All of these witnesses testified without making any objections themselves to revealing how they had voted, nor did the counsel for either party make any objection to their testifying.

The ballots cast in the Third ward were numbered by the judges of the election in the order they were cast, but the registration numbers of the voters were not placed upon any of them. The registration list showed that a number of persons who voted at the election were not registered voters, and the evidence shows that others who voted were not legally qualified voters. The evidence also tends to show that several persons whose votes were contested were, in the language of the pleadings, "Indians," that is, that the ballots cast by them had been prepared outside of the polling place and substituted for the ballots furnished by the judges and then voted. It is also shown that a few of the ballots that had been voted were erroneously numbered by the receiving judges.

W. N. Harris testified that on the morning after the election he was sent with a wagon and team to the polling place in the Eighth ward to take away the booths and ballot boxes; that he found, on a table where the ballot boxes were, a bunch of from seven to ten tickets, numbered with an indelible pencil, with the initials "R. L. S." (the initials of one of the judges of the election) on the back of them; that he looked at the heading of three or four of these tickets and saw they were Democratic tickets; that they had no holes through them showing that they had been strung; that he put these ballots in one of the ballot boxes.

He was corroborated by the owner of the building who opened the door for him and saw the bunch of tickets when his attention was called to them by Harris.

At the close of the evidence the contestant filed a motion requesting the court to make a special finding of

facts.   In compliance with said motion the court made a finding of facts as follows:

"The court finds that Dan Hogan, who voted for Lee, was not a qualified voter; that George Conley, who voted for Lee, is not a qualified voter; that Charles Huntington, who voted for Lee, is not a qualified voter; that Earl Weaver, who voted for Lee, is not a qualified voter; that Sam Crowder, who voted for Lee, is not a qualified voter.

"That W. T. Moxley, who voted for Donnell, is not a qualified voter; that Ed Robinson, who voted for Donnell, is not a qualified voter; that Noah Pierpont, who voted for Donnell, is not a qualified voter; that L. D. Foltz, who voted for Donnell, is not a qualified voter; that Thomas Foltz, who voted for Donnell, is not a qualified voter; that Joseph D. Cooper, who voted for Donnell, is not a qualified voter; that J. M. King who voted for Donnell, is not a qualified voter; that N. W. Murphy, who voted for Donnell, is not a qualified voter; that Frank McNelis, who voted for Donnell, is not a qualified voter; and that Oscar Lowery, who voted for Donnell, is not a qualified voter.

"The court sustains the challenges of the respective parties to the voters heretofore set forth; and overrules the challenges made by the contestee as to M. J. Murphy, J. T. Leedy and Dan Wilkerson, making a sustaining of five challenges made by the contestant on account of qualification of voters, and ten on the part of the contestee as to persons who voted for contestant.

"The court overrules the exceptions to the clerk's count in the First ward, and adopts said count as the ruling of the court on the exceptions saved to the ballots counted therein, giving to Donnell 189 votes and to Lee 283 votes, as reported by the clerk.

"The court overrules all exceptions to the count of the clerk in the Second ward and adopts the count made by him as the count of the court, giving to Donnell 295 votes and to Lee 377 votes.

"The court overrules all exceptions to the count of the clerk in the Third ward and adopts the count as made by him as the count of the court, giving to Donnell 241 votes, and to Lee 198 votes.

"The court overrules all exceptions to the count of the clerk in the Fourth ward, and adopts his count as the count of the court, giving Donnell 157 votes and to Lee 256 votes.

"The court finds that the clerk's rulings in reference to the form of the ballots, the erasures, etc., in the Fifth ward are correct, and that by such count Donnell received 364 votes, and Lee 340 votes.

"The court further finds from the evidence to be hereafter spoken of that five such votes cast in the Fifth ward, commonly known as 'Indian Ballots,' bearing clerk's numbers 129, 81, 49, 150 and 126, were on ballots or paper not delivered to the voter by the judges of election in said ward, but were delivered to him by some other person, and as to these five the court holds that they should be rejected, and should not be counted for the contestant.

"The court overrules all exceptions to the clerk's count in the Sixth ward and adopts the count of the clerk in said ward as the count of the court, giving Donnell 328 votes, and Lee 308 votes.

"The court overrules all exceptions to the clerk's count in the Seventh ward, and adopts the count of said clerk as the count of the court, giving Donnell 389 votes, and Lee 260 votes.

"The court sustains the clerk's ruling as to the form of the ballots, the erasure of the title of the office and the placing in of the names of the Eighth ward, which gives to Donnell 343 votes, and Lee 256 votes.

"The court further finds the facts to be as follows, in reference to the Eighth ward: That the election was conducted in a loose manner; that the ballots were not sealed up after the election, as required by law, but were placed in a paper sack and tied up with a string, and

in that condition delivered to the city clerk; that after they had been deposited with the said clerk, or at sometime after they were cast, a number of them have been changed, certainly as many as eight or nine, and probably as many as seventeen or eighteen.

"The court finds these facts from the last order made by the court allowing the ballots to be brought before the court, and upon the evidence prior to that order the court could not have found the same to be true, as is abundantly shown by the order itself, and by the results of the order. That is to say, the court on bringing the ballots before it, and on bringing the witnesses that voted the ballots, has shown that the evidence of the contestee with reference to the handwriting was not reliable, and that they were in error in a vast majority of instances, and the court, without bringing them before it, and without making this last order, could not have found the facts as they are abundantly shown to the court by the order, and the evidence thereunder to be and could not have been found to be changed under the evidence as it existed at that time.

"The court further finds that the count of the judges and clerks in the Eighth ward was not satisfactory, and that the contestant was probably prejudiced somewhere between seven and seventeen votes in that ward in the original count.

"The court also finds that the contestee had no knowledge of such defects or inaccuracies in said Eighth ward, and also finds that the contestant is not guilty of changing the ballots in the Eighth ward after they were voted, or of any knowledge of such change prior to the time.

"The court finds that the following ballots were changed in the Eighth ward after said ballots were cast and counted by the judges and clerks of election by erasing the name Lee and writing in the name Donnell, to-wit: numbers 195, 237, 113, 91, 90, 199, 125, 137 and 173.

"The court finds that in the Fifth ward there were no alterations of the ballots after they were cast.

"The court finds that there were no alterations of the ballots in the First ward.

"The court finds that there were changes in the Eighth ward after said ballots were cast and counted by the judges and clerks of election at the following place, as aforesaid, and therefore rejects the recount of that ward.

"The court finds that there were no alterations of the ballots in the Second ward, but finds that the ballots were not sealed up by the judges and clerks of the election, but were delivered to the city in a bursted pouch."

To which finding the contestant excepted generally, especially in respect to its finding in reference to the Eighth ward. His exceptions are as follows:

"The contestant excepts generally to the finding of the court and especially to its findings in reference to the Eighth ward.

"Contestant objects and excepts to the court's finding as to the nine ballots being changed in the Eighth ward, for the reason that the finding is not based upon competent evidence, and the finding itself shows that it is based exclusively upon the examination of the ballots by the court and his opinion from an inspection of the ballots and of the parties produced before the court relating thereto, and contestant objects thereto for the reason that the court had no right, power or authority to make the second order to produce said ballots in court, or to require the city clerk to certify the names of the parties voting said ballots objected to in the First, Fifth and Eighth wards, and now moves the court to strike out said finding, and objects and excepts thereto for those reasons, and because the said finding has no legal evidence to support it, and is against the evidence and against the law and the evidence."

The court found the issues for the contestee and

rendered judgment accordingly. A timely motion for new trial was filed which the court overruled. The contestant appealed to the Supreme Court, from which court, on November 10, 1902, the cause was transferred to this court.

*Hamlin & Mason, Wear & McGregor* and *Tatlow & Mitchell* for contestant.

(1)   No court in this State has any power to order the clerk having charge of the ballots to open them and compare them with the voting list and certify how such voters voted on the office in contest, because the Legislature has not seen fit to give any such power to the court. The power given is for the court to order the clerk, in the presence of the parties and their attorneys, to open, count and examine the ballots and certify such facts only as either party may desire, which may appear from the ballots (the word ballots does not include the voting list).   (2)   The further power is given the court to order the clerk to compare the ballots with the voting list, but not in the presence of the parties, or anyone else. He may certify the result of such comparison, that is, whether the ballots and voting list agree, or in other words, certify whether the ballots were cast by persons whose names appear on the voting list. But he can not certify the names of the persons voting the ballots, or any one or more of them. This the statute does not permit. This has been squarely ruled by the Supreme Court. State ex rel. v. Spencer, 164 Mo. 23; State ex rel. v. Oliver, 163 Mo. 679; Windes v. Nelson, 159 Mo. 51e; State ex rel. v. Spencer, 166 Mo. 271; Ex parte Arnold, 128 Mo. 256.   (3)   A former statute is repealed by implication where the latter statute covers the same subject and was evidently intended to be a substitute for the former statute. The amendment in 1891 clearly intended to cover the subject of numbering ballots. There would have been no use in inserting these provisions if they intended the

Australian ballot law to be governed by the old section 6995. Menker v. Fallhauer, 94 Mo. 430; Kansas City v. Smart, 128 Mo. 272; State v. Walbridge, 119 Mo. 387.

*Vaughan & Coltrane, Patterson & Patterson* and *O. E. Gorman* for respondent.

(1) The all-important and fundamental question presents itself to us at the very threshold of an inquiry as to the correct way to decide the questions arising in this case: Which is the more sacred and worthy of preservation, the right to vote at all, the right to cast a ballot and have it counted as cast, or the right of concealment as to how you voted? Respondent contends that the former is more important. The right to vote at all is primary; secrecy is secondary. (2) Appellant contends that secrecy is the chief thing; that although by fraud the will of the people may be subverted and set aside, an examination, though very much limited and circumscribed, is not to be permitted, if perchance in doing it you expose how some men voted. As the whole is greater than its parts, so is the right to have your vote cast and counted as cast greater than the mere secrecy of it, which is only an incident of such right. BARCLAY, J., in State ex rel. v. Slover, 126 Mo. 660, said: "In permitting some invasion of the secrecy of the ballot, the Constitution obviously intended to accomplish the purpose of preventing frauds upon the franchise that might escape detection if no inspection of ballots could be had. So the terms of that instrument sanction a limited scrutiny of the ballots in order to avert what is considered the greater mischief of a different policy." State ex rel. v. Sutton, 3 Mo. App. 388; Windes v. Nelson, 159 Mo. 51. (3) The burden of proof that the ballots have been preserved in the manner required by law, and have not been tampered with, is upon the party who relies upon the ballots to overcome the

count by the regular election officers.    Windes v. Nelson, 159 Mo. 51; Sone v. Williams, 130 Mo. 530.    It is only when the ballots have been rigorously kept inviolate that they constitute the highest and best evidence. People v. Livingstone, 79 N. Y. 279.    The facts going to show the purity of ballots and their proper preservation must fix their identity beyond a reasonable doubt.    Fenton v. Scott, 17 Oregon 189; Powell v. Holman, 50 Ark. 94; Newton v. Newell, 26 Minn. 529.    (4) The statute (sec. 6995, R. S. 1899) in effect provides that the registration number in all cities which have a population of over 25,000 and less than 100,000 shall be placed upon the ballots along with the voting number of the elector.    It further, in the same section, provides that if this is not done such ballots as are cast and placed in the boxes without this number shall not be counted.    That this provision is mandatory has been expressly adjudicated in several Missouri decisions.    West v. Ross, 53 Mo. 350; Ledbetter v. Hall, 62 Mo. 422; Bowers v. Smith, 111 Mo. 61; Hehl v. Guion, 155 Mo. 76.    (5)    A special law, or law regulating and governing some special matter, is not repealed by the enactment of a special law not specifically covering and repealing it, or by the enactment of a general law on the same subject, unless the special law is expressly repealed, or the conflict between the two is absolutely irreconcilable.    State v. Merry, 3 Mo. 278; State ex rel. v. Severance, 55 Mo. 378; Ex parte Joffe, 46 Mo. App. 360; State ex rel. v. Stratton, 136 Mo. 423.

BLAND, P. J.—1.    It is not in the province of an appellate court to determine disputes in doubtful questions of fact in contested election cases.    Turner v. Drake, 71 Mo. 285; Gunn v. Hubbard, 97 Mo. 311.    But it will, as in a law case, adopt the findings of the trier or triers of the issues of fact when there is any substantial evidence in support.    There is substantial evidence in the record to support each and every special

finding of fact made by the learned circuit judge, and these findings will not be disturbed by us.

2.   There are two questions of law presented by the record that are discussed in the briefs and arguments of counsel.   One is, may a ballot, cast at an election in a city that comes under the registration act, be counted, upon which the registration number of the person casting the ballot was not indorsed?   If it may not, then by the admitted facts the contestant must fail for the reason that in the Third ward, where he received forty-three votes more than the contestee, none of the ballots were marked with the registration number of the voter. The other question is, was it within the power of the circuit court to require the city clerk to produce the ballots alleged by contestee to have been fraudulently changed after they had been voted, and to make a record of them and of the persons who voted them and for whom they had actually voted?

The first question depends upon whether or not the mandatory words of section 6995, Revised Statutes 1899, requiring the current number and registration number of the voter to be indorsed upon each ballot, is in force in cities of twenty-five thousand and under one hundred thousand inhabitants, as the city of Springfield is a city of this class.   In respect to elections in this class of cities, article 7, chapter 102, Revised Statutes 1899, governs specially.

Section 7210, of the article, provides that, "All elections in such city shall be conducted in all respects as provided in the article, and subject to all the provisions of the Revised Statutes entitled 'Elections,' so far as the same do not conflict with this article."

Section 6995, article 1, chapter 102, entitled "Elections," provides that whenever a registration is required by law, in addition to the current number, the registration number of the voter shall be indorsed on his ballot, and that no ballot not so numbered shall be counted.   The form of the poll book prescribed by sec-

tion 7197, article 7, has a blank space for the registra-
tion number of the voter and for the current number
of his vote.

Section 7210, supra, reads into article 7, chapter
102, the provisions of section 6995, of article 1, in the
same chapter requiring the registration number of the
voter to be indorsed on his ballot.  The ballots cast in
the Third ward should therefore be excluded from the
count unless the mandatory words of section 6995 are
taken out by the Act of 1891, passed after the enact-
ment of section 6995.  The Act of 1891 repeals twelve
sections of article 3, chapter 60, Revised Statutes 1889,
and enacts twelve new sections in lieu thereof, and a new
section extending the provisions of the act as amended
to all election precincts in the State, thus extending the
Australian ballot system to all parts of the State.  The
sections of article 3, chapter 60, Revised Statutes 1889,
not repealed but amended by the Act of 1891, are
grouped with the Act of 1891 in article 4, chapter 102,
Revised Statutes 1899.

Section 6995, supra, is the same as section 4672, ar-
ticle 1, chapter 60, Revised Statutes 1889, and was not
in terms repealed or amended by the Act of 1891, and
should be held to be in force unless repealed by section
13, of the Act of 1891, which in terms repeals all acts or
parts of acts inconsistent with it.

Section 4785, Revised Statutes 1889, provides that
"no judge of election shall deposit any ballot upon
which the names or initials of two of the judges as here-
inbefore provided for does not appear."  The provis-
ion referred to is contained in section 4780 of the article
which requires that "the two judges of the election hav-
ing charge of the ballots shall write their names or ini-
tials upon the back of the ballot, within two inches of
the top thereof."

Section 4785 was amended by the Act of 1891 so as
to read as follows:  "Every ballot shall be numbered
in the order in which it shall be received.  No judge of

election shall deposit any ballot upon which the names or initials of the judges, as hereinbefore provided for, does not appear." The amendment is merely to require the ballot to be numbered. Before the amendment the law required the ballots to be numbered (sec. 4672, R. S. 1889); after amendment they were required to be numbered by two statutes, to-wit, by section 4672, article 1, chapter 60, and by section 4785, of article 3, of the same chapter as amended by the Acts of 1891. And, of course, they can stand together in so far as they require the ballots to be numbered consecutively.

In 1897 the Legislature repealed section 4780, Revised Statutes 1889, and enacted a new section in lieu thereof (now sec. 7104, R. S. 1899) which reads as follows:

"On any day of election of public officers in any election district, each qualified elector shall be entitled to receive from the judges of election one ballot of each political party voted for at said election. It shall be the duty of such judges of election to deliver such ballots to the elector. Before delivering any ballots to the electors the two judges of election having charge of the ballots shall write their names or initials upon the back of the ballots, with ink or indelible pencil, and no other writing shall be on the back of the ballot, except the number of the ballot voted."

This section applies only to an election of public officers and does not control in the election of a city officer, who is not a public officer, within the meaning of the section, as was decided by the Supreme Court by its order transferring this cause to this court.

The question then is, does section 11, of the Act of 1891, repeal so much of section 4785 (now sec. 6995, R. S. 1899) as requires the ballot to have indorsed upon it the registration number of the voter, where registration is required, in an election of city officers? It is a well-settled rule of construction that a former statute is repealed by implication when a later statute covers the

same subject-matter and was intended to be substituted for the former, and that where two statutes on the same subject are so inconsistent that both can not stand, the last in date supersedes the other. On the other hand, it is equally well settled that a later statute will not have the effect to repeal a former one by implication unless there is such repugnancy between them that both can not stand together or be reconciled. State ex rel. v. Spencer, 164 Mo. l. c. 48.

No registration of voters has ever been required in this State, outside of cities of twenty-five thousand inhabitants or over. The law of 1891 is a general law applicable to every precinct in the State. The law requiring the registration number of the voter as well as the current number of his vote to be indorsed upon his ballot, is special.

There are no words in the Act of 1891, that negative any of the mandatory provisions of section 6995 as applied to city elections. On the contrary the provisions of this section requiring that the current number of the voter be indorsed on his ballot is re-enacted by section 13, of the Act of 1891. The law is that a general affirmative statute does not repeal a prior and special one unless words negativing the continuance of the prior act are used, or the two are repugnant to each other, or are wholly irreconcilable, or the legislative intent to repeal the prior act is clearly manifested. City of St. Louis v. Ins. Co., 47 Mo. 146; City of St. Louis v. The Life Ass'n. of America, 53 Mo. 466; The St. Joseph & Iowa R'y. Co. v. Shambaugh, 106 Mo. 557; State ex rel. v. St. Joseph's Convent of Mercy, 116 Mo. 575; State ex rel. v. School Board, 131 Mo. 505; Lindell Real Estate Co. v. Lindell, 142 Mo. 61; State ex inf. v. Hogan,. 163 Mo. 48.

The two acts are not inconsistent; they are not repugnant to each other, nor is there any intent on the part of the Legislature manifested by the Act of 1891, to repeal or modify the mandatory words of section

6995 when applied to city elections. The Act of 1891 does not directly or indirectly amend any of the sections of the article in which section 4672, Revised Statutes 1889 (now sec. 6995, R. S. 1899) occurs, nor does it purport to legislate upon the whole subject of elections, but is merely an amendment of one article out of four devoted to that subject. The primary purpose of the amendment was to extend the Australian ballot system to every precinct in the State, to regulate the nomination of candidates for public office by political parties, and to provide some additional safeguards for conducting an election. There is certainly nowhere to be found in the amendment any purpose on the part of the Legislature to withdraw any safeguard that then existed, which purpose we would have to find before we could say that the mandatory words in section 6995, applied to an election for city officers, were abrogated by the amendment.

One of the purposes to be effectuated by indorsing the current number of the voter on his ballot and writing the corresponding number on the poll books opposite his name is, to connect the voter with his ballot in case of contest and to show for whom he voted. The purpose to be attained by writing the registration number of the voter on his ballot is, first, to show by the ballot itself that he was legally qualified to vote, and, second, to prevent more than one person voting on the same registration number. And it seems to us that it is as essential to a fair election and as necessary in case of contest that the registration number should be written on the ballot as that the voting number should be written thereon. We conclude that it was not in the mind of the Legislature, when the Act of 1891 was passed, to dispense with either of these requirements in an election for city officers. Hehl v. Guion, 155 Mo. l. c. 82.

3. Did the court err by making the order on the city clerk to produce the alleged forged ballots, etc., in

court for inspection and examination? It is apparent from a reading of the evidence in respect to the alleged forgeries, heard by the court before making the order and from the subsequent proceedings, that the court was in the dark as to whether or not any of the ballots had been altered. The count made by the city council gave Lee nine more votes that Donnell received; the count made by the clerk gave Donnell a plurality of thirty-seven over Lee. This discrepancy is not accounted for by the clerk in his return.

The ballots had been exposed after they came into the custody of the city clerk. A number of expert witnesses testified that, in their opinion, a number of the ballots had been changed by scratching out the name of Lee and writing in its stead the name of Donnell. An equal number of experts testified that these ballots furnished no evidence that any such changes had been made. The city clerk, who made the recount and was required to certify the facts as he found them, was in doubt as to whether or not the changes had been made on the ballots; all that he was willing to say was that there was a similarity in the writing on the ballots alleged to have been tampered with. In this condition of the evidence the judge, as an honest and fair-minded man, could not decide the issues with any degree of satisfaction to himself. The evidence was in existence and near at hand by which the truth of the matter could be ascertained, and the judge had it produced in open court and made a record of it and from it found out the facts as they were and on these facts awarded the office to the contestee. But the Supreme Court in the case of State ex rel. v. Spencer, 164 Mo. 23, and again in State ex rel. v. Spencer, 166 Mo. 271, has construed the election law adversely to the rulings made by the circuit court, by holding that under no conditions can the ballots in a contested election case be produced in open court and be made a record of; that the authority of the court in this respect is exhausted when it grants the

order provided for by section 7044, Revised Statutes 1899. Hence, it seems that the Legislature, according to the controlling construction of the law which binds this court, in its zeal to prevent A from finding out how B voted has also prohibited B from ever finding out for whom his vote was counted or whether it was counted at all; that it has placed the secrecy of the ballot above its integrity and has so framed the law that the "Indian," after the ballots have reached their final custodian, may break or steal in and tomahawk them, and that then no inquest can be held on their corpses adequate to identify the marks of his hatchet.

By excluding from the count the ballots voted in the Third ward, Lee has a clear plurality over Donnell, and for the reasons stated in the second paragraph of this opinion the judgment is affirmed. *Barclay, J.,* concurs; *Goode, J.,* not sitting.